UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SANDRA L. GILMAN
75 West Main Street
Pike, New York 14130,

                          Plaintiff,                    **COMPLAINT**

           v.                                           Civ. No.

DOLGENCORP OF NEW YORK, INC.
a/k/a DOLLAR GENERAL CORPORATION
100 Mission Ridge
Goodlettsville, Tennessee 37072

                          Defendant.

_____

         Plaintiff, SANDRA L. GILMAN, by and through her attorneys, GRECO TRAPP,

PLLC, for her complaint against the Defendant, respectfully states:

### JURISDICTION AND VENUE

   1.  This action is authorized by and instituted under Title I of the Americans with Disabilities

Act of 1990 (ADA), 42 U.S.C. § 12101, *et seq*., as amended by the Americans with Disabilities

Act Amendments Act of 2008 (ADAAA).  Plaintiff invokes the jurisdiction of this Court

pursuant to U.S.C. §§ 1331, 1337, and 1343 (4).  The matter in controversy arises under an Act

of Congress regulating commerce and relating to disability discrimination and it exceeds the sum

and value of $10,000.

   2.  The venue of this action is properly placed in the Western District of New York pursuant

to 28 U.S.C. § 1391.  Plaintiff resides in this District.  Upon information and belief, Defendant,

DOLGENCORP OF NEW YORK, INC., a/k/a Dollar General Corporation, was and still is

doing business in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

3.  Plaintiff, SANDRA L. GILMAN (hereinafter Ms. Gilman), is a citizen of the United States of America and resides in the Town of Pike, County of Wyoming, and State of New York.

4.  At all relevant times, Plaintiff was an "employee" as defined in 12111(4) of the ADA. Plaintiff was also an "employee" as defined in the New York State Human Rights Law, Executive Law § 290 *et seq.*

5.  Upon information and belief, Defendant, DOLGENCORP OF NEW YORK, INC., a/k/a DOLLAR GENERAL CORPORATION (hereinafter Dollar General), is a corporation duly licensed to conduct business in the State of New York, with its principal office located at 100 Mission Ridge, Goodlettsville, Tennessee. Dollar General operates multiple retail stores in Western New York.

6.  At all relevant times, Dollar General is an "employer" as defined in § 12111(5) of the ADA and the New York State Human Rights Law, Executive Law § 290 *et seq.*

7.  Plaintiff is a qualified individual within the meaning of ADA § 101(8), 42 U.S.C. §12111(8) who suffers from a disability within the meaning of the ADA, 42 U.S.C. § 12102(a). Plaintiff also has a disability as defined in the New York State Human Rights Law, Executive Law § 292.

8.  Defendant has continuously been engaged in an industry affecting commerce within the meaning of ADA § 101(5), 42 U.S.C. § 12111(5).

## STATEMENT OF CASE

9.  Ms. Gilman was hired by Dollar General on or about May 20, 2006.

10. Ms. Gilman was suspended without pay by Dollar General on or about November 6, 2014 and then terminated effective November 10, 2014.

11. Ms. Gilman was hired in the position of Assistant Manager for Dollar General Store # 9592, located at 46 South Genesee St., Fillmore, New York 14735.

12. On or about September 1, 2007, Ms. Gilman was promoted to the position of Store Manager for Dollar General Store # 8393, located at 9033 State Route 408, Nunda, New York 14517. As a result of that promotion she received a pay raise and significant employee benefits, including but not limited to bonuses, medical insurance, life insurance, accidental life insurance, vacation, and other personal leave.

13. Ms. Gilman's job performance was always at least satisfactory. She consistently received annual salary increases.

14. During the course of her employment at Dollar General, Ms. Gilman was evaluated on, among other things, her store's support of the local community by donations and other programs.

15. During the course of her employment at Dollar General, Ms. Gilman had been advised by her District Managers that one of the methods by which she could support the local community with donations was to donate "penny items" to local charities.

16. "Penny items" were considered to be outdated merchandise and items that Dollar General corporate headquarters removed from inventory by either donating, throwing out or returning designated items in a cardboard container for juice boxes to Dollar General's warehouse.

17. Each of Ms. Gilman's prior District Managers permitted and encouraged Ms. Gilman to donate "penny items" to local charities.

18.   On or about February 9, 2012, Ms. Gilman suffered an injury to her right shoulder while at work, which resulted in, among other things, anterior impingement due to acromioclavicular joint hypertrophy, supraspinatus tendinopathy with a tear of her rotator cuff, and infraspinatus tendinopathy.  She notified Dollar General of her injury and filed a Workers Compensation claim as a result of that injury.

19.   Dollar General permitted Ms. Gilman to return to work on a light duty basis.  She was unable to lift, pull, or push more than 10 pounds with her right arm and could not reach with her right arm.

20.   Prior to that time, Dollar General purported to maintain a requirement that its employees working in its retail stores, such as Store # 8393 located in Nunda, New York and Store 9592 located in Fillmore, New York, be physically able to lift 40 pounds on a regular basis and up to 55 pounds on an occasional basis.

21.   Dollar General permitted Ms. Gilman to return to work as a store manager with reasonable accommodations.  In particular, Ms. Gilman was permitted to schedule other employees an additional 24 hours per week to unload truck deliveries to the store and have store employees stock shelves of items weighing more than she could lift.

22.   Ms. Gilman, as a result of her injury to her right shoulder, underwent surgery on her right shoulder involving an acromioplasty and distal clavicle excision on March 16, 2013.

23.   Following her surgery, Ms. Gilman was out of work for approximately 6 weeks.  When she returned to work, she could not, and her physician issued directions that she could not, lift, push or pull more than 3 pounds with her right arm and could not reach with her right arm.

24.   Dollar General permitted Ms. Gilman to return to work as a store manager with the same reasonable accommodations as prior to her surgery:  Ms. Gilman was permitted to schedule

other employees an additional 24 hours per week to unload truck deliveries to the store and have store employees stock shelves of items weighing more than she could lift.

25.  Following her recuperation from the surgery, Ms. Gilman continued to suffer from a detachment of the deltoid to her acromion, bony tenderness in the anterior aspect of her acromion, acromioclavicular joint arthritis, crepitation, pain, tenderness, weakness and limited range of motion in her right shoulder.  Ms. Gilman was unable to, and her physician issued directions that she could not, lift, push or pull more than 25 pounds with her right arm.  A physician retained by Dollar General's Workers Compensation insurance carrier recommended that Ms. Gilman avoid overhead lifting of more than 20 pounds with both arms and avoid repetitive overhead lifting of more than 10 pounds with her right arm.

26.  As a result of the injury to her right shoulder, Ms. Gilman suffered a physical impairment that substantially limited one or more major life activity, including lifting and working.

27.  As a result of the injury to her right shoulder, Dollar General perceived Ms. Gilman as suffering from an impairment that was both not transitory and not minor.

28.  Nonetheless, Ms. Gilman was able to perform the essential functions of her job with or without reasonable accommodations.

29.  On or about May 10, 2014, while she remained disabled, Ms. Gilman was asked to, and agreed to, a transfer as Store Manager from Store # 8393 in Nunda, NY to Store Manager at Store # 9592 in Fillmore, NY.  The transfer included an increase in Ms. Gilman's salary.

30.  Following her transfer, Dollar General continued to permit Ms. Gilman to work as a store manager with the same reasonable accommodations: Ms. Gilman was permitted to schedule

other employees an additional 24 hours per week to unload truck deliveries to the store and have store employees stock shelves of items weighing more than she could lift.

31. On May 28, 2014, Ms. Gilman's physician filed for a permanent loss of use relative to her Workers Compensation Case, thereby putting Dollar General on notice that Ms. Gilman's injury to her right shoulder was permanent, not transitory and not minor.

32. Ms. Gilman could perform the essential functions of her job with reasonable accommodation for her disability.

33. Dollar General did not at any time after the determination of Ms. Gilman's permanent disability discuss with Ms. Gilman a reasonable accommodation for her disability.

34. In or about the second week of June, 2014, Ms. Gilman's District Manager, Jason Szeluga, told her he received an email from Nalisa Clark from Human Resources telling him to place Ms. Gilman on leave but he refused to do so. He told Ms. Gilman that Ms. Gilman would be doing a telephone call with Nalisa Clark from Human Resources in the future.

35. Ms. Gilman told her District Manager, Jason Szeluga, that she felt she was being discriminated against because of her disability, and was going to be placed on leave by Dollar General so she could be fired.

36. At the end of June 2014, District Manager, Jason Szeluga, again mentioned a call with Nalisa Clark of Human Resources but again gave no specific date for such call. District Manager, Jason Szeluga, told Ms. Gilman that the job duties of a Store Manager relative to stocking had changed and that Store Managers were only to be doing lighter lifting from totes relative to stocking and otherwise engaged in store management duties while store employees were unloading trucks and stocking shelves.

37.  District Manager Jason Szeluga also said that Rhonda Tilton, Human Resources representative, and Brian Obrist, Regional Manager, would recommend that Ms. Gilman be allowed to perform her job as a Store Manager despite her restrictions from her doctor so long as she waived any future claim to Workers Compensation relative to her right arm and the additional 24 hours per week of employee work time.  Ms. Gilman refused to waive any future claim to Workers Compensation relative to her right arm.

38.  On or about August 26, 2014, Scott Bishop, became Ms. Gilman's new District Manager.

39.  On or about Thursday, October 23, 2014, Ms. Gilman was examined by a physician for Dollar General relative to her Workers Compensation Case for a permanent loss of use evaluation.  He determined she had a 20% loss of use of her right arm.

40.  Other employees of Dollar General with similar or more extensive restrictions have been accommodated by Dollar General.

41.  On or about Wednesday, October 28, 2014, District Manager, Scott Bishop, during a telephone conference told Ms. Gilman, that if someone came in the store and asked for a deal on Halloween candy not to give it to them.  He did not tell her that she could not donate candy to a community event.

42.  Over the years the district manager' instructions for Halloween candy given by Dollar General to children at the stores on Halloween or donated to community events for Halloween was to damage them out.

43.  Later that day on or about Wednesday, October 28, 2014, two people from the local Fire Department came into the store and specifically asked for a deal on buying bags of Halloween candy for the local Fireman Halloween party for children.  Ms. Gilman did not

give them a deal on the candy but did donate two bags of candy to the party on behalf of Dollar General and damaged them out.

44. Further, it is the general practice of Dollar General store managers, to donate items reduced to a penny when found in the stockroom or on sales floor to local charities without specific permission.

45. Dollar General gave a directive on November 3, 2014 as a task to return specific items to the warehouse, and if there were items that would not fit in a cardboard box juice boxes container they could be donated or discarded.

46. When Ms. Gilman became the Store Manager of Store # 9592 in Fillmore, New York, she was directed to clean up Store # 9592 as it was a mess spilling into the aisles creating a danger to customers and staff.

47. On November 6, 2015, Ms. Gilman was cleaning out the overcrowded stockroom. While doing so she found 12 laundry baskets and 4 plastic drawers, each of which was marked down to a penny totaling 16 items at a penny each for a total of 16 cents.

48. Because of the normal practice of Dollar General and the specific instructions she received on November 3, 2014, that items that would not fit in a container for juice boxes could be donated or discarded she made the decision to donate the 16 items to the local 4H Group.

49. The leader of the 4H Group lived on Ms. Gilman's way home from work. Ms. Gilman decided to deliver them to the 4H Group leader because Ms. Gilman needed the room in the stockroom, due to limited space. On occasion Ms. Gilman had dropped off donations from Dollar General to local charities and had never been instructed not to do so.

50.  That same day, Dollar General sent a security employee, James Glorioso, to watch the store. Mr. Glorioso claimed to have witnessed a male store employee load a box from the store onto her pickup truck and drive away with it towards her home.

51.  In fact, Ms. Gilman asked a male to assist her in loading 16 "penny items" from the store into her pickup truck to deliver to a local 4H Group, in conformity with the practice of donating penny items to local charities.

52.  Mr. Glorioso contacted the New York State Police and had Ms. Gilman's truck stopped and Ms. Gilman arrested for stealing stock from the store.

53.  Ms. Gilman was not charged with any crime.

54.  Ms. Gilman was terminated by Dollar General on the pretext that she had stolen 16 cents of items from Dollar General and attempted to donate them without following proper procedure.

55.  Dollar General did not terminate the male employee who had assisted Ms. Gilman, and, upon information and belief, did not discipline this employee at all.

56.  Dollar General did not at any time after the determination of Ms. Gilman's permanent disability and prior to her termination discuss with Ms. Gilman a reasonable accommodation for her disability.

57.  Based on the above, Dollar General discriminated against Ms. Gilman by: (1) terminating her for having a physical impairment that substantially limits one or more of her major life activities; (2) terminating her for being regarded as having a physical impairment that substantially limits one or more of her major life activities; (3)  failing to consider and implement reasonable accommodations despite her demonstrated ability to meet the essential functions of

her job with reasonable accommodations; and (4)  and for retaliating against her for complaining of such discrimination.

58.  Dollar General, by and through its agents, servants, and/or employees, treated Ms. Gilman adversely because of her disability, retaliated against her, and engaged in a pattern and practice of knowing, intentional, willful and voluntary course of wrongful discriminatory conduct.

59.  As set forth above, Dollar General, by and through its agents, servants and/or employees, willfully and intentionally engaged in a course of conduct designed to make it appear as though Ms. Gilman was discharged for nondiscriminatory reasons.

60.  As a result of the conduct of Dollar General, by and through its agents, servants, and/or employees, Ms. Gilman has been deprived of terms and benefits of employment.

61.  As a result of the conduct of Dollar General, its agents, servants and/or employees, Ms. Gilman incurred damages including, but not limited to, lost back wages and lost future wages, lost employee benefits, lost employment opportunities, damage to her reputation in the community, severe emotional distress and mental anguish, degradation, humiliation, embarrassment and attorneys' fees and costs.

## CONDITIONS PRECEDENT TO ACTION

62.  Plaintiff, SANDRA L. GILMAN, has complied with all the jurisdictional prerequisites to action pursuant to § 12117 of the ADA as amended by the ADAAA, as follows:

> a.  In accordance with the time prescribed by § 706(e) of Title VII of the Civil Rights of 1964 and 42 U.S.C. § 2000e-5(e), and adopted by §12117 of the ADA as amended by the ADAAA, on or about February 25, 2015, Plaintiff, SANDRA L.

GILMAN, filed a Charge of Discrimination with the United States Equal
Employment Opportunity Commission (EEOC).

b.  On or about the same date, the EEOC caused a copy of said Charge to be filed
with the New York State Division of Human Rights.

c.  On or about January 25, 2016, the EEOC sent notification to Plaintiff that, with
respect to her Charge of Discrimination filed on or about February 25, 2015, she
had the Right to Sue within 90 days of the receipt of the notification. A copy of
the EEOC Right to Sue is attached hereto as Exhibit "A."

d.  Plaintiff has filed this action within 90 days of the receipt of the notifications of
the Right to Sue from the EEOC.

## AS AND FOR A FIRST CAUSE OF ACTION

63.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1"
through "62" as though fully set forth herein.

64.  Defendant terminated Plaintiff because of her disability in violation of § 102(a) of the
ADA, 42 U.S.C. § 12112(a).

65.  As a result of Defendant's actions, conduct, and omissions, including but not limited
to those described above, Defendant has engaged in a pattern and practice of discrimination
against Plaintiff with respect to her compensation, terms, conditions, and privileges of
employment because of her disability in violation of § 102(a) of the ADA, 42 U.S.C. § 12112(a)
thereby entitling Plaintiff to relief under the provisions of § 107(a) of the ADA, 42 U.S.C.
§ 12117(a).

66.  Defendant's wrongful acts, conduct, and omissions including but not limited to those
described above, were willful and wanton and done with malice or reckless indifference to

Plaintiff's rights and feelings in violation of § 102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, thereby entitling Plaintiff to an award of compensatory and/or punitive damages.

67.     Pursuant to § 102(b) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, Plaintiff is entitled to reinstatement of her position or in some other equivalent position, back pay, and attorneys' fees for the prosecution of this action and for damages and costs.

68.     Pursuant to § 505 of the ADA, 42 U.S.C. § 12205, as well as § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates the provisions of § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(k), Plaintiff is entitled to reasonable costs and attorney's fees.

69.     Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR A SECOND CAUSE OF ACTION

70.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "69" as though fully set forth herein.

71.     During the course of Plaintiff's employment, Defendant treated Plaintiff adversely because of her disability and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 et seq.

72.     Defendant, its agents, servants and/or employees had engaged in a pattern and practice of discrimination against Plaintiff with respect to compensation, terms, conditions, and privileges of employment because of her disability in violation of the Human Rights Law of the State of New York, Executive Law § 290 et seq.

73.     Defendant discriminated against Plaintiff in violation of the Human Rights Law of the State of New York, Executive Law § 290 et seq.

74.    Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights.

75.    As a result of Defendant's actions, conduct, and omissions, including but not limited to, those described above, Plaintiff incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, mental anguish, embarrassment and attorneys' fees.

76.    As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

77. Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A THIRD CAUSE OF ACTION

78.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "77" as though fully set forth herein.

79.    Defendant treated Plaintiff adversely because she complained of and opposed unlawful discriminatory practices by Defendant.

80.    As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Defendant has discriminated against Plaintiff with respect to her compensation, terms, conditions, and privileges of employment and in retaliation for complaining and opposing unlawful discriminatory practices by Defendant, in violation of § 503 of the ADA, 42 U.S.C. § 12203, thereby entitling Plaintiff to relief under the provisions of § 107 of the ADA, 42 U.S.C. § 12117, which incorporates § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5.

81.    Defendant's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff's rights and feelings in violation of §

102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, and employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment. Plaintiff is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

82.    As a direct and proximate result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

83.    Pursuant to § 505 of the ADA, 42 U.S.C. § 12205, as well as § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates the provisions of § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(k), Plaintiff is entitled to reasonable costs and attorney's fees.

84.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A FOURTH CAUSE OF ACTION

85.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "84" as though fully set forth herein.

86. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

87.    During the course of Plaintiff's employment, Defendant, its agents, servants, and/or employees treated Plaintiff adversely in retaliation for her complaints and opposition to unlawful discriminatory conduct and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 et seq.

88.   Defendant discriminated against Plaintiff with respect to compensation, terms, conditions, and privileges of employment in retaliation for her complaints and opposition to unlawful discriminatory conduct and in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq*.

89.   Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights under the Human Rights Law of the State of New York.

90.   As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages and employee benefits, lost employment opportunities, mental anguish, embarrassment, and emotional distress.

91.   As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

92.   Plaintiff demands a jury trial as to all issues so triable.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1.   On the first cause of action, Plaintiff demands judgment against Defendant reinstating Plaintiff to employment in her prior or equivalent position, the amount of $2 million as actual and compensatory damages for loss of revenue, including back pay and in the absence of reinstatement front pay, pain, suffering and mental anguish, and punitive damages together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

2.   On the second cause of action, Plaintiff demands judgment against Defendant reinstating Plaintiff to employment in her prior or equivalent position, the amount of $2 million

as actual and compensatory damages for loss of revenue, including back pay and in the absence

of reinstatement front pay, pain, suffering and mental anguish, together with interest, costs,

expenses, and such other and further relief as to this Court may seem just and proper.

    3.    On the third cause of action, Plaintiff demands judgment against Defendant

reinstating Plaintiff to employment in her prior or equivalent position, the amount of $2 million

as actual and compensatory damages for loss of revenue, including back pay and in the absence

of reinstatement front pay, pain, suffering and mental anguish, and punitive damages together

with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this

Court may seem just and proper.

    4.    On the fourth cause of action, Plaintiff demands judgment against Defendant

reinstating Plaintiff to employment in her prior or equivalent position, the amount of $2 million

as actual and compensatory damages for loss of revenue, including back pay and in the absence

of reinstatement front pay, pain, suffering and mental anguish, together with interest, costs,

expenses, and such other and further relief as to this Court may seem just and proper.

Dated:      Buffalo, New York
            April 20, 2016

    s/Josephine A. Greco
    Josephine A. Greco, Esq., of Counsel
    Duane D. Schoonmaker
    GRECO TRAPP, PLLC
    Attorneys for Plaintiff
    Office and Post Office Address
    1700 Rand Building, 14 Lafayette Square
    Buffalo, New York 14203
    Telephone Number:  (716) 856-5800
    E-mail Address:  jgreco@grecolawyers.com

# EXHIBIT "A"

EEOC Form 161 (2/08)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Sandra L. Gilman**
     **75 West Main Street**
     **Pike NY  14130**

From:   **Buffalo Local Office**
        **6 Fountain Plaza**
        **Suite 350**
        **Buffalo, NY 14202**

[ ] *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **846-2015-09481** | **David Ging,**<br>**Investigator** | **(716) 551-3035** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

*John E. Thompson*

**John E. Thompson, Jr.**
**Director**

JAN 2 5 2016

*(Date Mailed)*

cc:  **Melanie R. Siemens**
     **Dollar General**
     **100 Mission Ridge**
     **Goodlettsville, TN  37072**

**Dollar General**

**Josephine A. Greco**
**Greco , Trapp**
**1700 Rand Bldg.**
**14 Lafayette Sq.**
**Buffalo, NY  14202**

Enclosure with EEOC
Form 161 (2/08)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit
before 7/1/02 – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if
you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed
within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --   Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE*